## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RICARDO MARTIZE ADKINS, | ) | |
| | ) | |
| Petitioner, | ) | CRIMINAL ACTION |
| | ) | |
| v. | ) | No. 18-3153-KHV |
| | ) | |
| WARDEN DAN SCHNURR, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On January 23, 2009, in the District Court of Sedgwick County, Kansas, a jury convicted Ricardo Martize Adkins of raping a legally blind 18-year-old high school student. On March 6, 2009, the trial court sentenced him to 586 months in prison. This matter is before the Court on petitioner's pro se <u>Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody</u> (Doc. #1) filed June 26, 2018. For reasons stated below, the Court denies the petition and denies a certificate of appealability.

## Factual Background

The Kansas Court of Appeals set out the facts of petitioner's state court case as follows:

During the early afternoon of April 24, 2008, L.M.B., the victim, waited in northeast Wichita for a municipal bus. Before going through the rest of the facts, we offer some description of L.M.B. gleaned from the trial record. She began losing her sight about 4 years earlier. At the time of these events, L.M.B. was legally, though not completely, blind. She used a cane as an aid to getting around and worked with a "mobility trainer" to relearn navigations skills sighted persons often take for granted. The trainer had been teaching L.M.B. how to use the city bus system. This particular trip was to have been L.M.B.'s first solo excursion using the buses.

That afternoon, a Thursday, L.M.B. intended to go to her high school soccer team's game. . . . L.M.B. apparently maintained good grades in school. There is information in the trial transcript indicating that L.M.B. appeared to be extremely deliberate in her testimony in the sense she seemed to take an unusually long time

to answer even preliminary and background questions. Trial testimony from persons who know L.M.B. suggests she was unusually trusting and naive for her age to the point of being socially and emotionally impaired. We hesitate to venture any more definitive or clinical a characterization, since no expert witness spoke to L.M.B.'s circumstance and the testimony in that regard tended more toward the anecdotal and descriptive.

With that introduction, we continue. While L.M.B. was waiting for a bus, Adkins approached her and engaged her in conversation. He offered to drive her to the soccer match. After initially hesitating, L.M.B. accepted that invitation. Instead of going to the game, however, Adkins drove to a house in the general vicinity. He and L.M.B. went in. Adkins and another man visited for 10 to 15 minutes in the living room.

Adkins then led L.M.B. into a cluttered bedroom. He began to kiss L.M.B. At trial L.M.B. testified that she did not want Adkins to kiss her but was scared to tell him to stop. She told the jury she did not kiss back. And in [a] statement she gave to police about 10 days after the encounter with Adkins, L.M.B. said she had begun to cry. The police detective who took the statement so testified at trial.

Adkins removed L.M.B.'s shorts and underwear, took off his clothes, and made L.M.B. recline on the bed. He then began having sexual intercourse with her. At some point, according to her testimony, L.M.B. told Adkins he was hurting her; she also told him to stop. He did not. In response to a question from the prosecutor on direct examination, L.M.B. said Adkins continued the sex act for "a couple of hours or so" after she requested he stop. The chronology of events plainly demonstrates that estimate to be impossibly long. Eventually, Adkins stopped and told L.M.B. it was time to go. They got dressed. Adkins then drove L.M.B. to the soccer match.

Several days later, L.M.B. told her mother what had happened. She explained she waited because she was scared. What L.M.B. described to her mother was a nonconsensual sexual encounter, in a word – rape. Because of her impaired vision, L.M.B. could provide only a general description of her assailant and was unable to make a definitive identification. The family retrieved the clothing L.M.B. had worn to the soccer match from a hamper. Law enforcement agents were able to recover semen from L.M.B's underwear for DNA testing. The testing took several months to complete. The DNA profile was then run against a databank containing genetic profiles of convicted criminals. Adkins came back as a DNA match to the profile developed for the man who had intercourse with L.M.B.

Wichita police picked up Adkins and interviewed him about the incident. He initially denied any knowledge of such an encounter. When the officers told Adkins they had DNA evidence, he allowed that he must have had consensual sex and had since forgotten about the circumstances. The police obtained a DNA

sample from Adkins at the time of the interview. A forensic scientist matched the DNA profile from that sample to the genetic profile for the man who had sex with L.M.B.

The case was tried to a jury for 3 days starting January 21, 2009. Various law enforcement officers and a DNA expert testified during the trial. L.M.B. testified, as did several of her family members. Adkins did not testify in his own defense but relied on the statements he had given police during the investigation, thus maintaining L.M.B. had consented to the sexual encounter. The jury convicted Adkins of rape. Based on Adkins' past criminal record that included a felony conviction and numerous misdemeanor convictions involving violent or assaultive behavior, the rape conviction, a severity level 1 person felony, carried a presumptive sentencing range of 554 to 618 months. The trial judge imposed the mid-range sentence of 586 months' imprisonment.

State v. Adkins, No. 102,560, 248 P.3d 784 (Table), 2011 WL 1196906, at *1-3 (Kan. Ct. App. Mar. 25, 2011), rev. denied (Kan. Oct. 3, 2011) (Adkins I).

Petitioner filed a direct appeal. The Kansas Court of Appeals affirmed. Petitioner then sought review in the Kansas Supreme Court, asserting the following grounds for relief:

(1)     The prosecutor engaged in misconduct when he attempted to define for the jury what a reasonable amount of time would have been between L.M.B.'s withdrawal of consent and the actual end of intercourse;

(2)     The trial court erred in allowing evidence which suggested that petitioner had prior convictions;

(3)     Insufficient evidence that petitioner committed rape;

(4)     The combination of errors deprived petitioner of a fair trial; and

(5)     The trial court violated petitioner's Sixth and Fourteenth Amendment rights and Apprendi v. New Jersey, 530 U.S. 466 (2000), when it used his prior convictions to enhance his sentence without submitting them to a jury or proving them beyond a reasonable doubt.

Appellant's Petition For Review, State v. Adkins, No. 102,560 (Apr. 22, 2011). The Kansas Supreme Court denied review.

Petitioner sought post-conviction relief in the trial court pursuant to the Kansas habeas

corpus statute, Kan. Stat. Ann. § 60-1507. The trial court granted an evidentiary hearing on one claim – whether the state had made a formal plea offer which counsel did not communicate to petitioner – and summarily denied all other claims. See Order Den. In Part Movant's K.S.A. 60-1507 Mot. And Granting An Evidentiary Hr'g, Adkins v. State, No. 11-cv-4515 (D. Ct. Sedgwick Cnty. June 8, 2012). After an evidentiary hearing, the trial court denied the remaining claim.

Petitioner appealed. He asserted that he was entitled to an evidentiary hearing on his claims that trial counsel provided ineffective assistance by failing to (1) obtain and introduce L.M.B's medical records, (2) obtain and introduce a mental evaluation of L.M.B, (3) call petitioner's cousin, Ulysses Franklin, and petitioner's mother, Kim Locks, to testify at trial and (4) utilize phone records to impeach L.M.B. Adkins v. State, 345 P.3d 295 (Table), 2015 WL 1513948, at *3-4, *7 (Kan. Ct. App. Mar. 27, 2015) (Adkins II). Petitioner also asserted that the trial court violated Kansas Supreme Court Rule 183(j) by failing to make sufficient findings of fact and conclusions of law regarding his claim that trial counsel had been ineffective in failing to file a motion asserting his right to a speedy trial. Id. at *9. The Kansas Court of Appeals affirmed in part, reversed in part and remanded for an evidentiary hearing on whether trial counsel was ineffective in failing to (1) obtain and introduce L.M.B.'s medical records, (2) request a mental evaluation of L.M.B. and (3) call Franklin as a witness. Id. at *11. After a hearing on those issues, the trial court again denied petitioner's motion for post-conviction relief. Tr. Of The Ct.'s Ruling On Habeas Corpus Evidentiary Hr'g, Adkins v. State, No. 11-cv-4515, (Dec. 9, 2015).

Petitioner appealed the trial court's denial of his motion for post-conviction relief based on ineffective assistance and cumulative error. Brief of Appellant, Adkins v. State, No. 114,963 (Kan. Ct. App. Oct. 6, 2016). On August 25, 2017, the Kansas Court of Appeals affirmed the denial of petitioner's motion for post-conviction relief. Adkins v. State, 401 P.3d 179 (Table),

2017 WL 3668916 (Kan. Ct. App. Aug. 25, 2017), rev. denied (Kan. Feb. 27, 2018) (Adkins III).

On September 25, 2017, petitioner sought review in the Kansas Supreme Court on two of the three ineffective assistance issues: (1) counsel's failure to obtain L.M.B.'s medical records and (2) counsel's failure to call Franklin as a witness. Petition For Review, Adkins v. State, No. 114,963. On February 27, 2018, the Kansas Supreme Court denied review.

On June 26, 2018, petitioner filed this federal habeas petition. Repeating arguments that he made in state court, petitioner asserts the following grounds for relief: (1) the evidence was insufficient; (2) the prosecutor made an improper closing argument regarding a "reasonable time" between L.M.B.'s withdrawal of consent and petitioner's cessation of intercourse; (3) the trial court erred in allowing the jury to hear a reference to a DNA database; (4) the trial court improperly used his prior convictions at sentencing because a jury did not determine the fact of those convictions beyond a reasonable doubt; (5) counsel was ineffective in failing to obtain L.M.B.'s medical records; (6) counsel was ineffective in failing to request a mental evaluation of L.M.B.; (7) counsel was ineffective in failing to call Franklin as a witness; (8) counsel was ineffective in failing to impeach L.M.B. with phone records; and (9) the trial court violated Kansas Supreme Court Rule 183(j) by failing to make sufficient findings of fact and conclusions of law regarding his claim that trial counsel had been ineffective in failing to file a motion asserting his right to a speedy trial.[1]

---

[1]     Petitioner initially asserted ten claims. On October 19, 2018, the Honorable Sam A. Crow found that petitioner had not exhausted state remedies for his tenth claim and directed petitioner to choose between dismissing that claim and proceeding with this action or returning to state court to present the unexhausted claim. Order To Show Cause (Doc. #3). On October 28, 2018, petitioner advised the Court that he would like to dismiss claim 10 from his petition. Doc. #4.

On July 16, 2019, the State of Kansas filed an Answer and Return which denies petitioner's allegations.

On August 9, 2019, petitioner filed a reply consisting of two pages of factual allegations and what appear to be excerpts from state court briefs. Traverse (Doc. #30).

## Standards For Habeas Petitions Under 28 U.S.C. § 2254

The Court reviews a state inmate's challenge to his conviction in state court under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). The Court may not issue a writ of habeas corpus with respect to any claim that the state court adjudicated on the merits unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1), (2); see Charlton v. Franklin, 503 F.3d 1112, 1114-15 (10th Cir. 2007).

Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if the state court (1) arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or (2) decided the case differently than the United States Supreme Court on materially indistinguishable facts. Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). Under the "unreasonable application" clause, the Court may grant habeas relief if the state court correctly identified the governing legal rule but applied it unreasonably to the facts of petitioner's case. Williams v. Taylor, 529 U.S. 362, 407-08 (2000). The Court may not issue a writ simply

because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly; rather, the application must have been objectively unreasonable. See id. at 409-11.

The Court presumes that the state court factual determinations are correct. Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003). Petitioner bears the burden of rebutting this presumption with clear and convincing evidence. Id. This presumption does not extend to legal determinations or to mixed questions of law and fact. Id. That is, if the state court employed the wrong legal standard in deciding the merits of the federal issue, the deferential standard of review does not apply. Id. Ultimately, the Court's review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings. Frost v. Pryor, 749 F.3d 1212, 1222 (10th Cir. 2014).

## Analysis

As noted, petitioner asserts nine grounds for habeas corpus relief: (1) the evidence was insufficient; (2) the prosecutor made an improper closing argument regarding a "reasonable time" between L.M.B.'s withdrawal of consent and petitioner's cessation of intercourse; (3) the trial court erred in allowing the jury to hear a reference to a DNA database; (4) the trial court improperly used his prior convictions at sentencing because a jury did not determine the fact of those convictions beyond a reasonable doubt; (5) counsel was ineffective in failing to obtain L.M.B.'s medical records; (6) counsel was ineffective in failing to request a mental evaluation of L.M.B.; (7) counsel was ineffective in failing to call Franklin as a witness; (8) counsel was ineffective in failing to impeach L.M.B. with phone records; and (9) the trial court violated Kansas Supreme Court Rule 183(j) by failing to make sufficient findings of fact and conclusions of law regarding his claim that trial counsel had been ineffective in failing to file a motion asserting his right to a

speedy trial. On October 19, 2018, Judge Crow found that petitioner had exhausted state remedies as to these claims and that they are properly before the Court in habeas corpus. Order To Show Cause (Doc. #3) at 3. The Court addresses each claim in turn.

## I. Sufficiency Of The Evidence (Claim 1)

At the time of petitioner's conviction, Kansas law provided that if a victim clearly withdraws consent, rape occurs even if the victim initially consented to sexual intercourse, as long as the perpetrator fails to stop within a reasonable time. State v. Bunyard, 281 Kan. 392, 414-15, 133 P.3d 14, 30 (2006). Reasonableness of the time between withdrawal of consent and the interruption of intercourse is a jury question. Id.

Petitioner argues that the evidence at trial was insufficient to support his conviction for rape. Specifically, he asserts that the state had to prove that after L.M.B. withdrew her consent, petitioner continued the intercourse, through force or fear, beyond a reasonable time. Traverse (Doc. #30) at 27, 30. He asserts that the evidence must provide the jury sufficient information to determine what was a "reasonable time," and that L.M.B.'s testimony that he continued for "a while" after she withdrew consent was insufficient to support a finding that he continued beyond a reasonable time. Id. at 27-28.

In rejecting petitioner's argument, the Kansas Court of Appeals applied a standard which is similar to federal law: whether evidence had been admitted at trial that in its unrebutted and uncontradicted form would have allowed reasonable jurors to reach its verdict. Adkins I, 2011 WL 1196906, at *2 (citing State v. Hayden, 281 Kan. 112, 132, 130 P.3d 24 (2006) (standard of review on appeal whether viewed in light most favorable to prosecution, rational factfinder could have found guilt beyond reasonable doubt)); see Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (evidence sufficient to support criminal conviction if viewing evidence in light most favorable to

prosecution, rational factfinder could have found essential elements of crime beyond reasonable

doubt).

The Kansas Court of Appeals concluded as follows:

> L.M.B.'s testimony established that even if she had consented at the outset
> (although the evidence reasonably supports a conclusion she never acquiesced), she
> withdrew any consent during the act. She further testified that [petitioner]
> continued for another "couple of hours." As we pointed out, L.M.B.'s time
> estimate is clearly too long. But a jury could reasonably conclude her testimony
> conveys that the act continued for a considerable, though indeterminate, amount of
> time. That is, [petitioner] did not stop immediately or in any reasonably brief
> period after L.M.B. told him to. L.M.B.'s testimony on that point is sufficient to
> support the jury's verdict and to meet the legal requirements of Bunyard. A rape
> victim need not offer testimony as to an exact time between the statement
> withdrawing consent and the perpetrator's actual cessation of the sex act. It is
> enough that the evidence generally establishes an unqualified period that a jury
> could find to be unreasonable under the circumstances. L.M.B.'s description of
> the lapsed time as on the order of 2 hours meets that standard. We need not
> speculate about the sufficiency of hypothetical testimony referring to a generic
> "five minutes" or "a little while" without some additional supporting evidence –
> those circumstances do not depict the facts of this case.

Adkins I, 2011 WL 1196906, at *3. The decision of the Kansas Court of Appeals was not contrary

to federal law or based on an unreasonable determination of the facts in light of the evidence

presented in the trial court. Accordingly, petitioner is not entitled to relief on this ground.

## II.     Prosecutorial Misconduct (Claim 2)

Petitioner asserts that during closing argument, the prosecutor invaded the province of the

jury and misstated the law when he attempted to define what was a "reasonable time" after

L.M.B.'s withdrawal of consent and petitioner's cessation of the sexual intercourse. During

closing arguments, the prosecutor stated as follows:

PROSECUTOR:     She was unequivocal. It hurts. Stop. She felt pain.
                If he didn't stop within a reasonable amount of time,
                that's rape. What's a reasonable amount of time?
                That's up to you to determine. If you think it's
                reasonable that he had five or ten seconds to stop, that's

|  |  |
|---|---|
|  | fine. What's not reasonable is that he continues till he ejaculates. |
| DEFENSE COUNSEL: | Objection. Facts not in evidence. |
| THE COURT: | Overruled. There can be an inference that occurred from [the DNA Analyst's] testimony. |
| PROSECUTOR: | You can draw conclusions based upon what you heard the facts to be, ladies and gentlemen. The facts are from [the DNA Analyst's] testimony there were sperm in the cutting of the underwear of [L.M.B.]. You can determine how that got there. . . . The point is he can't continue till conclusion if she tells him to stop. That's not a reasonable amount of time for him to continue. When she said, Stop, he has to stop or it's rape. |
|  | * * * |
|  | There's no evidence to say that he stopped when she said, Stop. In fact, all the evidence is that he continued. [L.M.B.] told you on the stand she thinks it was two hours. That may be unreasonable. It's clearly unreasonable to continue for two hours after she says, Stop, if that's how long he went. Maybe that's an unbelievable amount of time for you, but consider her testimony that he picked her up sometime around 1:00 o'clock and dropped her off at soccer right around 3:00 o'clock. Is she extrapolating the entire amount of time with the amount of sex, or maybe it goes to her state of mind and her ability to perceive time? She's top 15 percent of her class, but is she really that bright? |

Tr. Of Jury Trial Proceedings, State v. Adkins, No. 08-cr-2516, Vol. III, at 162-64 (Aug. 5, 2009).

In rebuttal, the prosecutor further stated as follows:

|  |  |
|---|---|
| PROSECUTOR: | Or is it that he didn't want to admit the truth, that he raped her. That she said, Stop, and he didn't stop. But don't forget that he never told Detective Wiswell that, She said, stop, and I stopped. He never said that. He never said that. Yet the argument is, well, the evidence must be that she said, Stop, and he stopped reasonably [sic] amount of time thereafter. |

-10-

Officer Kelley's here to tell you what was told to him. . . . He told you [L.M.B.] said, Stop, it hurt. She told Detective Wiswell, I said, Stop. It hurt. She told you it hurt. I said, Stop. He didn't stop. The evidence is quite the contrary. He continued on, not for a reasonable amount of time, not seconds or even a minute. He continued.

Id. at 182-83.

The Kansas Court of Appeals found that the prosecutor had not given an improper argument and had neither invaded the province of the jury nor misstated the law. It determined that the trial judge properly instructed the jury on the law and that the jury understood that it must decide whether petitioner had stopped within a reasonable time after L.M.B. withdrew consent.

Id. Specifically, the Kansas Court of Appeals stated as follows:

The jury was properly instructed on the legal principles outlined in Bunyard and, therefore, understood what it was to decide on this point—whether Adkins stopped within a reasonable time after L.M.B. withdrew consent (assuming she fairly could have been understood to have consented in the first place). In making his closing argument, the prosecutor twice told the jurors it was up to them to determine if a reasonable time had elapsed. The jurors were instructed that the arguments of counsel were intended to help them in understanding the evidence and in applying the law to that evidence. The trial judge also told the jurors that the applicable law was contained in the written instructions he read and then provided to them. The jurors, therefore, should not have treated the argument from either side as a definitive explanation of the law.

Moreover, the prosecutor did not suggest to the jury that the law *requires* a finding that too long a time had passed if the accused rapist ejaculates after being told to stop the sex act. Instead, he suggested to the jury that the evidence in this particular case supported a conclusion that because Adkins continued until he ejaculated, he failed to stop within a reasonable time. The prosecutor drew specifically on L.M.B.'s testimony that Adkins continued for what seemed like several hours after she told him to stop. He acknowledged that 2 hours or so was not an accurate estimate. But, he told the jurors, the description nonetheless indicated a substantial period of time that they could find to be unreasonable.

Given the facts in this case, particularly L.M.B.'s testimony on the lapse of time,

we fail to see how the prosecutor's argument exceeded the bounds of appropriate comment on the evidence and the law. Our conclusion rests on an especially solid foundation where the prosecutor did not misstate the law and twice told the jurors, in the context of making the precise point, that they must decide what amounted to a reasonable time. Because we find no error in the prosecutor's argument, we need not (and do not) engage in the second-step of the misconduct analysis.

Adkins I, 2011 WL 1196906, at *4 (emphasis in original).

Federal habeas relief addresses only egregious misconduct that would amount to a constitutional denial of due process. Smith v. Phillips, 455 U.S. 209, 221 (1982). In considering a claim of prosecutorial misconduct on federal habeas review, the question is whether the prosecutor's conduct was so egregious as to render the entire proceeding fundamentally unfair. Short v. Sirmons, 472 F.3d 1177, 1195 (10th Cir. 2006) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974)); see Smith, 455 U.S. at 219 (touchstone of due process analysis in alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor).

Here, the prosecutor's statements did not rise to the level of a due process violation. The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

## III.   Reference To DNA Database (Claim 3)

Before trial, defense counsel filed a motion in limine to prevent the state from referencing the DNA database which provided the initial lead that petitioner was a possible suspect, because it would imply that he had prior criminal convictions. The trial court allowed the evidence but limited the terminology which the state could use to refer to the database. At trial, the prosecutor made one reference to a DNA database and petitioner's counsel did not object. Petitioner asserts that the trial court erred when it allowed the jury to hear this reference, in violation of the motion

in limine. On appeal, the Kansas Court of Appeals found that petitioner had not preserved this error for review and declined to consider it in the absence of a contemporaneous objection at trial.

In a habeas proceeding, the Court does not address an issue which petitioner defaulted in state court on an independent and adequate state procedural ground, unless he shows cause and prejudice or a fundamental miscarriage of justice. Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995). An independent and adequate procedural ground is one arising under state law and one that has been consistently applied in the state courts. Sherrill v. Hargett, 184 F.3d 1172, 1174 (10th Cir. 1999). The contemporaneous objection rule is routinely followed in Kansas state courts and the Kansas Court of Appeals expressly declined to consider the merits of this issue because counsel failed to object at trial. See Kan. Stat. Ann. § 60-404; Carr v. Koerner, 120 F. App'x 772, 775 (10th Cir. 2005). The rule is thus both an independent and adequate state procedural ground for default.

To overcome the bar by showing cause and prejudice for the default, petitioner must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). In the alternative, to demonstrate a fundamental miscarriage of justice, petitioner must make a colorable showing of factual innocence. Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998). Petitioner has not satisfied either showing.[2] Therefore, petitioner's claim is procedurally defaulted for purposes of habeas review.

---

[2]     Petitioner does not argue that counsel was ineffective in failing to object to any reference to a DNA database at trial.

## IV. Use Of Past Convictions In Sentencing (Claim 4)

Pursuant to the Kansas Sentencing Guidelines, the trial judge used petitioner's prior convictions in determining his presumptive sentence.[3]   See Tr., Vol. 12, State v. Adkins, No. 08-cr-2516.   Petitioner asserts that this violates Apprendi v. New Jersey, 530 U.S. 466 (2000), because a jury did not determine the fact of those convictions beyond a reasonable doubt.   He concedes that the Kansas Supreme Court has rejected this argument and has found that the state's use of past convictions in determining a presumptive statutory punishment at sentencing is constitutional.   See State v. Fischer, 288 Kan. 470, 473, 203 P.3d 1269, 1272 (2009); State v. Ivory, 273 Kan. 44, 46-48, 41 P.3d 781, 782-83 (2002).   Based on Kansas Supreme Court decisions and petitioner's acknowledgement that his arguments are foreclosed, the Kansas Court of Appeals declined to rule otherwise.

In Apprendi and Blakely v. Washington, 542 U.S. 296, 301 (2004), the Supreme Court clearly held that prior convictions are an exception to the general rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   530 U.S. at 490.   On federal habeas review, the Tenth Circuit has rejected claims that the state's use of prior convictions for sentencing purposes violates Apprendi.   See Hunter v. Werholtz, 505 F.3d 1080, 1081-82 (10th Cir. 2007).   Accordingly, the trial judge's use of petitioner's prior convictions at sentencing was not contrary to and did not

---

[3]         The trial judge sentenced petitioner to 586 months in prison, which was the presumptive guidelines sentence based on his offense level 1, criminal history score B.   Petitioner requested a sentence "more in the range of 120 months."   See Tr. Of Posttrial Motions And Sentencing Proceedings, Vol. 12, State v. Adkins, No. 08-cr-2516 (Aug. 5, 2009) at 40.

involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

## V.    Ineffective Assistance of Counsel (Claims 5, 6, 7 and 8)

Petitioner asserts that trial counsel provided ineffective assistance by failing to (1) obtain the medical records from L.M.B.'s medical examination after she reported being raped, (2) request a mental evaluation of L.M.B., (3) call Franklin as a witness and (4) impeach L.M.B. with phone records. Petitioner raised these claims in his K.S.A. § 60-1507 motion and the trial court summarily denied relief. He appealed, and the Kansas Court of Appeals determined that he was entitled to an evidentiary hearing on whether counsel was ineffective in failing to (1) obtain L.M.B.'s medical records, (2) request a mental evaluation of L.M.B. and (3) call Franklin as a witness. See Adkins II, 2015 WL 1513948, at *5-8. After conducting an evidentiary hearing, the trial court again denied relief on all claims. Petitioner appealed the second denial of his motion and the Kansas Court of Appeals affirmed. See Adkins III, 2017 WL 3668916.

To show ineffective assistance of counsel, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance resulted in prejudice to his defense. Strickland, 466 U.S. at 687-88. The Court's review is "doubly deferential" in that it takes a highly deferential look at counsel's performance under Strickland, through the deferential lens of Section 2254(d). Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (citations omitted).

### A.    L.M.B.'s Medical Records (Claim 5)

Petitioner asserts that trial counsel provided ineffective assistance because she failed to obtain L.M.B.'s medical records. At trial, petitioner's counsel solicited testimony from L.M.B.'s mother regarding whether L.M.B. had any injuries after the alleged rape. L.M.B.'s mother

testified that L.M.B.'s "vaginal area was raw" and "her skin was sloughing off." Petitioner asserts that L.M.B.'s medical records would have shown that she did not have injuries and that counsel should have used medical records to impeach L.M.B.'s mother.

The Kansas Court of Appeals determined that even assuming counsel's failure to obtain the medical records was a mistake, it did not so detract from his defense as to fall below the constitutional standard for adequate representation. Adkins III, 2017 WL 3668916, at *4. It stated that while counsel could have been more precise, her questions to L.M.B.'s mother regarding L.M.B.'s injuries and her mother's answer confirmed by negative implication the absence of injuries. Id. at *5. Further, the Kansas Court of Appeals determined as follows:

> Even if we assume posing the question [to L.M.B.'s mother] fell below the line for constitutional representation, we see little, if any, prejudice to Adkins. First, L.M.B. testified that she had vaginal bleeding following the sex act, so the jury already had that information. Second, nothing in the record evidence suggested vaginal rawness or bleeding proved directly or circumstantially that Adkins raped L.M.B. By her own account, L.M.B. did not physically resist Adkins. She said she submitted out of fear. When L.M.B. was examined at the hospital, her physical condition would have been essentially equally consistent with consensual sexual intercourse and a rape carried out through intimidation rather than physical brutality. L.M.B.'s mother's testimony about "injuries" could not have been the decisive factor in the jury's resolution of the charge.[ ]
>
> The criminal case turned on the credibility of L.M.B.'s account of the incident weighed against Adkins' account. The testimony from L.M.B.'s mother added nothing of significance to the evidence before the jury and bore little on the pivotal issue. In short, had the question not been asked, the verdict would have been the same. In turn, the lawyer's failure to obtain the medical records, which might have caused her to refrain from asking the question at all or might have provided a basis to dispute the answer, did not materially prejudice Adkins' defense. Under the Strickland test, the point warrants no relief on a 60-1507 motion.

Adkins III, 2017 WL 3668916, at *5 (footnote omitted).

The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

B.    Mental Evaluation Of L.M.B. (Claim 6)

Petitioner asserts that trial counsel provided ineffective assistance by failing to request a mental evaluation of L.M.B.[4]  He raised this argument in his state habeas petition and the Kansas Court of Appeals directed the trial court to conduct an evidentiary hearing on it.   After petitioner's counsel testified at the evidentiary hearing, the trial court determined that counsel had made a strategic decision not to seek a mental evaluation of L.M.B. and that even if she had requested such an evaluation, the trial court would have denied the request.   See Tr. Of The Ct.'s Ruling On Habeas Corpus Evidentiary Hr'g, Adkins v. State, No. 11-cv-4515, at 6-9 (Dec. 9, 2015).

The Kansas Court of Appeals affirmed, finding that trial counsel's decision to not seek a psychological examination of L.M.B. did not deprive petitioner of constitutionally adequate representation and that he had failed to show prejudice on two grounds.   First, he did not present evidence which would support a motion for a psychological examination: petitioner's reliance on lay witnesses' testimony that she was "slow" and "socially guarded" was insufficient.   Second, he did not tender an affidavit or similar evidence from a psychiatrist or psychologist to the effect that L.M.B. might have had a diminished capacity which could have been diagnosed in a mental examination.   The Kansas Court of Appeals determined that without such evidence, petitioner could not establish prejudice resulting from counsel's failure to request a mental evaluation.

---

[4]        While the Kansas Court of Appeals uses the term "psychological evaluation," petitioner uses the term "mental evaluation."   The Court uses the terms interchangeably.

Adkins III, 2017 WL 3668916, *3-5.

The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.[5]

### C.    Potential Defense Witness (Claim 7)

Petitioner asserts that trial counsel provided ineffective assistance by failing to call his cousin, Ulysses Franklin, as a defense witness. He asserts that Franklin saw petitioner and L.M.B. together and could have corroborated his story that the sex was consensual. Petitioner raised this claim in his state habeas petition. The trial court denied relief and the Kansas Court of Appeals reversed and directed the trial court to conduct an evidentiary hearing on this issue. Petitioner's trial counsel and Franklin testified at the evidentiary hearing, and the trial court again denied relief.

Applying Strickland, the Kansas Court of Appeals affirmed. It found that trial counsel's decision reflected a strategic choice – she had investigated whether to call Franklin as a witness and concluded that it was best not to do so. The Kansas Court of Appeals determined that her decision was a reasoned one and fell within the wide range of legal representation protected under Strickland. In addition, the Kansas Court of Appeals held that petitioner could not show prejudice that was sufficient to undermine the verdict. It stated as follows:

> Had Franklin been called as a witness at trial and assuming he gave substantially
> the same testimony he provided at the 60-1507 hearing, we fail to see a sound basis

---

[5]    The state argues that this claim is procedurally defaulted because petitioner did not raise it in his petition for review to the Kansas Supreme Court. Judge Crow previously determined that petitioner's claim had been exhausted and is properly before the Court. Order To Show Cause (Doc. #3) at 3. Judge Crow's order is law of the case. See Entek GRB, LLC v. Stull Ranches, LLC, 840 F.3d 1239, 1241 (10th Cir. 2016) (law of case doctrine bars relitigation of issues court resolved in prior proceedings). In any event, for reasons noted above, petitioner's argument is without merit.

to say the verdict probably would have been different. Franklin's testimony did not directly support or undermine the credibility of either L.M.B. or Adkins. Although his testimony itself didn't hurt Adkins, his appearance on the witness stand and his background conceivably might have. More importantly, however, Franklin's testimony would not have seriously undermined L.M.B.'s version of events or impugned her credibility particularly on the critical issue of what she told Adkins in the bedroom.

For those reasons, the trial lawyer's decision against calling Franklin as a witness does not warrant relief.

Adkins III, 2017 WL 3668916, at *7.

The Kansas Court of Appeals reasonably applied Strickland to conclude that petitioner failed to show that counsel had provided ineffective assistance. Its decision was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

D.    Phone Records (Claim 8)

Petitioner asserts that counsel provided ineffective assistance by failing to properly utilize phone records to show that L.M.B. was on the phone with him after the alleged rape. At trial, the state stipulated to admission of the phone records, but petitioner's counsel did not call a witness to testify about their significance. On collateral appeal, petitioner asserted that counsel should have used the phone records to impeach L.M.B. The trial court denied relief on this issue and the Kansas Court of Appeals affirmed.[6]   Adkins II, 2015 WL 1513948, at *9.

The Kansas Court of Appeals found that even assuming counsel's failure to impeach

---

[6]    The state asserts that "[t]his issue was never raised in the district court, on direct appeal, or in a collateral appeal. . . . Petitioner's claim that trial counsel failed to impeach L.M.B. with phone records was not fairly presented to any Kansas appellate court and would be barred from review under Kansas law." Answer And Return (Doc. #26) at 17. This is plainly false. To the extent the state argues that petitioner has not exhausted this claim, the Court has held otherwise. See supra note 5.

L.M.B. with the phone records was deficient performance, petitioner failed to show prejudice. It stated that during closing argument, counsel directed the jury to the phone records and noted that they contradicted L.M.B.'s testimony that she had not talked to Adkins since the alleged rape. The Kansas Court of Appeals further stated that the record indicated that the jury considered the phone records because it asked for L.M.B.'s phone number during deliberations. Petitioner failed to present any evidence to support a finding of prejudice.

The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

## VI. Kansas Supreme Court Rule 183(j) And Speedy Trial Motion(Claim 9)

Petitioner asserts that the trial court "failed to rule that [he] asserted [his] right to a speedy trial" and that the record does not reflect "why counsel ignored [his] right to a speedy trial" and requested a continuance after he had asserted that right. Petition (Doc. #1) at 15; Traverse (Doc. #30) at 13.[7] In his Traverse, petitioner states that the trial court violated Kansas Supreme Court Rule 183(j) by failing to make sufficient findings of fact and conclusions of law regarding his claim that trial counsel had been ineffective in failing to file a motion asserting his right to a speedy trial, and that he is entitled to an evidentiary hearing on this issue.[8] Traverse (Doc. #30) at 14.

_____

[7] The state does not address the merits of this claim and instead asserts that it is unexhausted and procedurally defaulted because it "has not received a round of review by any Kansas appellate court." Answer And Return (Doc. #26) at 14. As the Court explained above, supra note 4, Judge Crow previously determined that petitioner's claim had been exhausted and is properly before the Court. Order To Show Cause (Doc. #3) at 3.

[8] It is unclear whether petitioner asserts that the trial court violated Rule 183(j) by failing to find that he had asserted his right to a speedy trial or by failing to rule on his claim that counsel was ineffective in failing to file a speedy trial motion. Because petitioner's claim would be procedurally defaulted if he did not raise it in state court, the Court construes his claim in the

On October 30, 2008, petitioner filed a pro se motion for a speedy trial. On November 21, 2008, the trial court held a hearing on this motion, which it overruled without comment. <u>See</u> Motion Minutes Sheet, <u>State v. Adkins</u>, No. 08-cr-2516. In his Section 60-1507 motion, petitioner asserted that trial counsel was ineffective in failing to file the speedy trial motion on his behalf. <u>See</u> K.S.A. § 60-1507 Motion, <u>Adkins v. State</u>, No. 11-cv-4515 (Dec. 21, 2011). At the non-evidentiary hearing on his habeas motion, the trial judge summarily denied relief and petitioner's counsel did not contemporaneously object. <u>See</u> Tr. Of § 60-1507 Proceedings, <u>Adkins v. State</u>, No. 11-cv-4515 (May 17, 2012), at 5, 27.[9]

Petitioner appealed the trial court's denial of his Section 60-1507 motion. <u>See</u> <u>Adkins II</u>, 2015 WL 1513948, at *9. He asserted that by failing to make sufficient findings of fact and conclusions of law on his claim that counsel was ineffective in failing to file a speedy trial motion, the trial court violated Kansas Supreme Court Rule 183(j), which provides that "[t]he court must make findings of fact and conclusions of law on all issues presented." The Kansas Court of Appeals determined that petitioner had not preserved this issue for appellate review because at the hearing, he did not object to any alleged violation of Rule 183(j). Specifically, the Kansas Court

---

same way the Kansas Court of Appeals did – <u>i.e.</u> as a claim that the district court violated Rule 183(j) by failing to make sufficient findings of fact and conclusions of law with respect to petitioner's claim that counsel was ineffective in not filing a speedy trial motion. <u>See</u> <u>Adkins II</u>, 2015 WL 1513948, at *9.

[9] The trial judge determined that petitioner's claim regarding a plea offer (which is not relevant here) merited an evidentiary hearing and stated that as to petitioner's other claims, he did not "see the need to go through them point by point." Tr. Of § 60-1507 Proceedings, <u>Adkins v. State</u>, No. 11-cv-4515 (May 17, 2012) at 27. In his written order, the trial judge did not specifically mention petitioner's claim that counsel was ineffective in failing to file the speedy trial motion. <u>See</u> Order Den. In Part Movant's K.S.A. 60-1507 Mot. And Granting An Evidentiary Hr'g, <u>Adkins v. State</u>, No. 11-cv-4515 (June 8, 2012).

of Appeals held as follows:

> [T]he State correctly notes that Adkins did not object to the district court's allegedly inadequate findings of fact and conclusions of law. In order to give the district court the opportunity to correct inadequacies, litigants and their counsel generally bear the responsibility of objecting to such errors and in the absence of an objection, omissions in findings will not be considered on appeal. See State v. Herbel, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). Without an objection, our court presumes the district court found all the facts necessary to support its judgment, but we may consider a remand if the lack of specific findings precludes meaningful review. State v. Vaughn, 288 Kan. 140, 143, 200 P.3d 446 (2009). Given that Adkins did not object to any claimed violation of Supreme Court Rule 183(j) in the district court, we find he has not preserved this issue for appellate review.

Adkins II, 2015 WL 1513948, at *10.

The Kansas Court of Appeals' decision that petitioner did not preserve this claim for appellate review was based on the contemporaneous objection rule, i.e. an independent and adequate state procedural rule. See Ray v. Simmons, 125 F. App'x 943, 946 (10th Cir. 2005) (district court did not err in finding claim procedurally barred based on failure to contemporaneously object in state court). As noted, absent a showing of cause and prejudice or a fundamental miscarriage of justice, a federal habeas court may not review an issue which petitioner defaulted in state court on an independent and adequate state procedural ground. Maes, 46 F.3d at 985. Because petitioner has not shown cause and prejudice or a fundamental miscarriage of justice, his claim is procedurally defaulted for purposes of habeas review.

In the alternative, the Kansas Court of Appeals held that even if petitioner had preserved this issue for appellate review, he had failed to show prejudice resulting from trial counsel's failure to file a speedy trial motion. This decision was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

## Conclusion

For the reasons discussed, the Court concludes that petitioner has not established any instance where the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

Further, the record conclusively shows that petitioner is not entitled to relief. Accordingly, no evidentiary hearing is required.   See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1998).

## Certificate Of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Pursuant to 28 U.S.C. § 2253, the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court indicates "which specific issue or issues satisfy [that] showing."   A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently or that the questions deserve further proceedings.   Slack v. McDaniel, 529 U.S. 473, 484 (2000).   In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   Id.

The Court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the Court's ruling resulting in the dismissal of this action is debatable or incorrect. The record does not suggest that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that the Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. #1) filed June 26, 2018 is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2254 petition is **DENIED**.

Dated this 31st day of October, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge